## APPEAL OF GREENVILLE COAL CO.

Docket No. 3784.   Submitted November 16, 1925.   Decided April 20, 1926.

1. Certain expense and capital items segregated and determined.

2. Taxpayer not allowed amortization of war facilities where it appears the facilities still have a useful though diminished value and there is insufficient evidence to enable the Board to determine to what extent their useful value was impaired, or the actual or estimated cost of replacing them under normal postwar conditions.

3. Under the circumstances in this appeal, a reserve for liabilities to injured employees is not deductible in excess of the actual payments therefrom.

*W. P. Sandidge, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before MARQUETTE, GREEN, and LOVE.

This appeal is from the determination of a deficiency in income and profits tax for the year 1918, in the amount of $79,213.02.

The taxpayer urges four assignments of error:

(*a*) The Commissioner erred in disallowing items amounting to $8,006.81, which taxpayer deducted as expense items.

(*b*) The Commissioner erred in refusing to allow the taxpayer to take a deduction by $31,038.88, on account of certain items first charged by it to capital account and then, by amended return, claimed as expense items.

(*c*) The Commissioner erred in refusing to allow amortization of war facilities as a deduction.

(*d*) The Commissioner erred in refusing to allow taxpayer to take a deduction of $15,838.91, reserve for liability insurance.

FINDINGS OF FACT.

The taxpayer is a Kentucky corporation with its principal office at Greenville. Its business is that of operating a coal mine. In 1918 it expended $7,194.90 for the following items, which were used in the operation of its mine and charged to expense, and as such disallowed by the Commissioner and by him restored to capital:

EXHIBIT A.

| 1918. | | |
|---|---|---|
| Feb. | 11. Dynamite and electric fuses | $205.19 |
| | 11. Pipe and fittings, replacement parts steam line | 719.68 |
| | 11. Pipe, valves, grease cups | 180.06 |
| | 11. Fire brick used in furnace | 185.38 |
| | 27. Extension electric line | 327.37 |
| Mar. | 2. Pipe and fittings | 407.52 |
| | 10. Hoisting rope replacement | 121.48 |
| Apr. | 5. Steel rails | 2,491.27 |
| July | 10. Copper cable | 151.16 |
| | 10. Tipple scales replacement | 128.86 |
| | 10. Repairs on tipple scales | 24.98 |
| | 16. Freight on material | 6.44 |
| | 16. Shaft and counterweight for weight pan | 25.91 |
| Aug. | 10. Repairs on locomotive | 169.46 |
| | 10. Asbestos | 300.00 |
| Sept. | 10. Automatic switches used in extension mine track | 455.63 |
| Nov. | 11. Copper wire used in extension electric line | 754.51 |
| | 11. Asbestos | 540.00 |
| | | 7,194.90 |

In 1918 it expended \$31,083.04 for the following items, used by it in the operation of its mine and originally charged by it to the capital account, but later, in an amended return, claimed as expense items, and as such disallowed by the Commissioner and by him restored to capital:

EXHIBIT B.

1918.

| | | | |
|---|---|---|---:|
| Jan. | 15. | Trolley wire extension | \$403.65 |
| | 15. | Cages for shaft | 436.13 |
| | 15. | Hoisting engine | 2,741.74 |
| | 15. | Payment on electric locomotive | 1,920.82 |
| Feb. | 11. | Bolts and washers | 13.15 |
| | 11. | Small lighting generator | 262.72 |
| | 11. | Payment on electric locomotive | 519.50 |
| Mar. | 13. | Two mining machines | 5,000.00 |
| | 13. | Freight | 20.90 |
| | 13. | Twenty mine cars | 2,655.46 |
| | 28. | Steel rails for extension | 2,367.72 |
| | 29. | One mining machine | 2,500.00 |
| Apr. | 10. | Tipple scales | 180.00 |
| | 10. | Frogs and switches, extension motor road | 340.47 |
| | 16. | Screens | 2,177.33 |
| June | 3. | Mining machine | 3,200.00 |
| | 10. | Rapier scales | 21.00 |
| | 26. | Miscellaneous labor | 36.00 |
| July | 31. | One mining machine | 3,200.00 |
| Aug. | 10. | Wagon scales | 241.83 |
| | 10. | Transformer | 214.00 |
| Nov. | 29. | Twenty mine cars | 2,630.60 |

31,083.04

Prior to the World War, taxpayer was able to obtain all needed labor by employing men who had homes near enough to its mines to work the mines from their homes, which obviated the necessity of taxpayer furnishing quarters for its laborers.

When the war came on most of such labor went into the Army, and it then became necessary for taxpayer to build houses for men with families in order to supply the mine with necessary labor. A large proportion of the output of the mine, during the war period, went directly to government-operated railroads, munition plants, and other war facilities. After the close of the war, when the soldiers had returned home, the necessary laborers could have been and to a large extent were obtained without the use of those houses, but most of those houses have been used by taxpayer as tenant houses, or for other purposes, since the close of the war. Those houses cost taxpayer approximately \$31,000. The Commissioner refused to allow any amortization.

Prior to 1916 taxpayer carried liability insurance. By reason of a controversy with the insurance company, it ceased, in 1916, to carry such insurance, and in lieu thereof deposited periodically with a trustee certain amounts as a reserve to meet and care for its liability to employees for accidents. In 1918 it deposited in said reserve $15,838.91, and during that year paid out to injured employees $6,248.67.

Taxpayer deducted the whole amount so deposited in said reserve from its gross income. The Commissioner allowed the deduction to the extent of $6,248.67 and disallowed the balance.

OPINION.

LOVE: Among the items listed in Exhibit A, copied in the findings of fact, we believe, from the evidence in this appeal, that the following should be classed as ordinary and necessary expense items and that their costs should be deducted as such:

| | |
|---|---|
| Dynamite and electric fuses | $205. 19 |
| Pipe and fitting replacements, parts of steam line | 719. 68 |
| Pipe, valves, grease cups | 180. 06 |
| Fire brick used in furnace | 185. 38 |
| Pipe and fittings | 407. 52 |
| Hoisting rope replacements | 121. 48 |
| Tipple scales replacements | 128. 86 |
| Repair on tipple scales | 24. 98 |
| Freight on material | 6. 44 |
| Shaft and counterweight for weight pan | 25. 91 |
| Repairs on locomotive | 169. 46 |
| Asbestos | 300. 00 |
| Asbestos | 540. 00 |
| | 3, 014. 96 |

The other items listed in Exhibit A, we believe, should be classed as capital, as determined by the Commissioner.

With reference to items listed in Exhibit B, as copied in our findings of fact, under all ordinary conditions, we believe they clearly fall within the classification of capital, and there are no facts in the record which show that those items should be otherwise treated in the instant appeal. *Appeal of Winifrede Coal Co.*, 1 B. T. A. 566; *Appeal of Union Collieries Co.*, 3 B. T. A. 540; *Appeal of Kirk Coal Co.*, 3 B. T. A. 755. The determination of the Commissioner as to said Exhibit B is approved.

Taxpayer claimed amortization on the tenant houses erected by it during the war period. The record discloses the fact that those tenant houses have been used by the taxpayer since the close of the war. Neither the exact amount or comparative value of such use, nor the actual or estimated cost of replacing them under normal

postwar conditions, is disclosed. It may be that taxpayer is entitled to some amortization on account of materially diminished useful value, but, because it is disclosed that those houses have been and still are used, it is evident that they did not lose their entire useful value, and there are no facts in the record that will enable the Board to determine to what extent their useful value was impaired. We therefore approve the determination of the Commissioner on that issue.

During the taxable year taxpayer set aside as a reserve $15,838.91 to take care of its liabilities to injured employees. Out of that fund it paid to injured employees during the year $6,248.67. The Commissioner allowed a deduction in the amount of actual payments, but disallowed the reserve in excess of such payments. In this the Commissioner was right. Such a reserve is not authorized by the Revenue Act of 1918.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*